UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARMEN WALLACE and BRODERICK BRYANT, individually and on behalf of all other similarly situated individuals, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 18 C 4538 |
| v. | ) ) | Judge Edmond E. Chang |
| GRUBHUB HOLDINGS INC. and GRUBHUB INC., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Carmen Wallace and Broderick Bryant are drivers for food-delivery service Grubhub. Wallace and Bryant bring this proposed class action against Grubhub (there are actually two corporate entities—Grubhub Inc. is the parent—but the parties treat them as one), seeking additional wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b); the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.*; and the California Labor Codes, Cal Lab. Code §§ 1194, 1197, 2802 and Cal. Bus. & Prof. Code §§ 17200-17208.[1] Grubhub has moved to dismiss the case for improper venue, arguing that all of the Plaintiffs' claims must be resolved via arbitration. For the reasons explained below, the Court grants Grubhub's motion.

---

[1]This Court has subject matter jurisdiction over the federal claims in this case under 28 U.S.C. § 1331. It has supplemental jurisdiction over the Illinois and California claims under 28 U.S.C. § 1367. Citations to the docket are indicated by "R." followed by the docket entry and page or paragraph number.

## I. Background

Grubhub is an online food-delivery service that employs drivers to deliver prepared meals from restaurants to customers who order through its website or mobile app. R. 1, Compl. ¶¶ 1, 14. Grubhub drivers complete deliveries via car or bicycle. *Id.* ¶ 15. Grubhub is headquartered in Chicago but operates its food-delivery service across the country. *Id.* ¶ 10.

Carmen Wallace was a delivery driver for Grubhub from July 2016 through March 2017 in Chicago. Compl. ¶ 5. Broderick Bryant has worked as a delivery driver for Grubhub since May 2016 in Long Beach, California. *Id.* ¶ 6. Wallace and Bryant filed this proposed collective and class action, alleging that Grubhub misclassified its drivers as independent contractors and violated the wage-and-hour requirements under the Fair Labor Standards Act, the Illinois Minimum Wage Law, and the California Labor Code. *Id.* ¶ 2. Along with the Complaint, Wallace and Bryant filed 52 Opt-In Consent Forms from other Grubhub drivers seeking to join this action. R. 31, Mtn. Dismiss ¶ 5.

Grubhub now moves to dismiss the action under Federal Rule of Civil Procedure 12(b)(3) and the Federal Arbitration Act (FAA). Fed. R. Civ. P. 12(b)(3); 9 U.S.C. §§ 3-4. Grubhub asserts that its relationship with the Plaintiffs is governed by a Delivery Service Provider Agreement, which contains a "valid and enforceable arbitration provision that is governed by the Federal Arbitration Act" and waives the driver's right to bring a collective or class action. Mtn. Dismiss ¶¶ 6, 7.

## II. Legal Standard

The Seventh Circuit has explained that a motion seeking dismissal based on an arbitration clause is best conceptualized as an objection to venue and, thus, properly brought under Rule 12(b)(3). *Automobile Mechs. Local 701 Welfare and Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007). A Rule 12(b)(3) motion requires the Court to assume the truth of the plaintiff's factual allegations (unless the defense offers evidence to the contrary) and draw reasonable inferences in its favor. *Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 806 (7th Cir. 2011). The Court is not limited to the consideration of the pleadings when ruling on a motion to dismiss for improper venue, though, and if there is a dispute over the factual allegations, then the Court may consider evidence submitted with the motion without converting the motion to one for summary judgment. *Id.* at 809-810.

Under the FAA, an arbitration provision in a "contract evidencing a transaction involving commerce … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Sections 3 and 4 of the Act empower federal courts to stay litigation and compel arbitration according to the terms of the parties' agreement. 9 U.S.C. §§ 3, 4. Because "arbitration is a matter of contract," however, a federal court cannot require a party "to submit to arbitration any dispute which he has not agreed so to submit."

3

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (cleaned up).[2] The party opposing arbitration bears the burden of establishing why the arbitration provision should not be enforced. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000).

### III. Analysis

Grubhub asserts that this case is not properly in federal court because the Plaintiffs "hav[e] agreed to resolve the disputes presented in this litigation via arbitration." R. 32, Defs.' Br. at 2. Grubhub specifically points to a clause in the DSPA (the parties insist on calling the agreement by that acronym) that states that "only an arbitrator, not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Arbitration Provision." R. 32.2, DSPA Agmts, Exh. 5 ¶ 12.

The Plaintiffs do not argue that the DSPA they signed is invalid or must be revoked. They instead counter Grubhub's motion by asserting that the Court cannot compel the drivers to arbitrate because they are exempt from the FAA under 9 U.S.C. § 1, often referred to as the transportation-worker exemption. R. 41, Pls.' Resp. at 2. Section 1 excludes from the FAA's coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

---

[2] This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### A. Arbitrability of the Transportation-Worker Exemption

Much of the parties' briefing focuses on who should decide the transportation-worker exemption's applicability—the Court or an arbitrator. *See* R. 42, Defs.' Reply at 2-7; R. 53, Pls.' Sur-Reply at 1-2. After briefing closed, the Supreme Court issued its opinion in *New Prime Inc. v. Oliveira*, and definitively settled the matter when it held that a court—rather than an arbitrator—must determine whether § 1 applies before the court may compel arbitration. 139 S. Ct. 532, 537-38 (2019). This is because, "to invoke its statutory powers under §§ 3 and 4 [of the FAA] to stay litigation and compel arbitration according to a contract's terms, a court must first know whether the contract itself falls within or beyond the boundaries of §§ 1 and 2." *Id.* at 537. So this Court must decide if Grubhub drivers fall into the category of transportation workers excluded from the FAA under § 1.

### B. The Transportation-Worker Exemption

Before *New Prime* was decided, Circuit courts were split over § 1's application to independent contractors. *Compare Oliveira v. New Prime, Inc.*, 857 F.3d 7, 20-21 (1st Cir. 2017) (explaining that independent contractor agreements constitute "contracts of employment" for purposes of § 1), *with In re Van Dusen*, 654 F.3d 838, 843-45 (9th Cir. 2011) (holding that a court must first determine that the plaintiff is an employee before applying § 1). The Supreme Court has since explained that the exemption applies equally to employees and independent contractors, so there is no need to decide in which category the Plaintiffs belong. *New Prime*, 139 S. Ct. at 541.

The only question remaining, then, is whether Grubhub drivers are properly placed into the category of transportation workers exempted under § 1, specifically, those workers who are "engaged in foreign or interstate commerce." The parties dispute whether the exemption requires that workers physically cross state lines. The Seventh Circuit has not explicitly held that personal interstate travel is a requirement of the exemption, but the court has stated that § 1 covers "workers engaged in the movement of goods across state lines," and found that truckers primarily engaged in Illinois, but who occasionally transported goods into Missouri, are covered by the § 1 exemption. *Intern'l Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC,* 702 F.3d 954, 957 (7th Cir. 2012).

The Plaintiffs here do not argue that they crossed state lines while driving for Grubhub. They instead assert that "to fall under the FAA['s] § 1 transportation worker exemption, it is not necessary for the transportation workers to have physically crossed state lines in order to deliver goods." Pls.' Resp. at 12. But the cases the Plaintiffs cite in support of this assertion are neither binding nor analogous to their situation. First, the Plaintiffs cite to a statement from the Third Circuit in *Palcko v Airborne Express, Inc.*, that—in isolation—seems to suggest that § 1 covers Grubhub drivers, regardless of their interstate travel: "[H]ad Congress intended the residual clause of the exemption to cover only those workers who physically transported goods across state lines, it would have phrased the FAA's language accordingly." 372 F.3d 588, 593-94 (3d Cir. 2004). But the employee at issue in *Palcko* provided direct supervision to truck drivers who undoubtedly engaged in, among

other things, "interstate" and "international" shipping. *Id.* at 590. This was enough for the Third Circuit to conclude that the employee's work—specifically, the supervision of drivers who crossed state and national lines—was "so closely related to interstate and foreign commerce as to be in practical effect a part of it." *Id.* at 593 (cleaned up). *Palcko* thus did not sweepingly state that crossing state lines is irrelevant to the applicability of the transportation-worker exemption. Instead, the decision relied on the close and direct work relationship between the supervisor and those who did cross state lines.

The same reasoning drove the holding in *Ward v. Express Messenger Sys., Inc.*, No. 17-cv-2005-NYW, R. 118 (D. Colo. Jan. 28, 2019). *See* R. 56, Pls.' Supp. Authority at 2. The District of Colorado, relying on *Palcko,* decided that truck drivers employed by a corporation that "provides regional same-day and overnight package delivery services within Arizona, California, Nevada, Oregon, Washington, Utah, Colorado and Idaho" for customers like Amazon and Staples, were covered by the transportation-worker exemption. *Ward*, No. 17-cv-2005-NYW, R. 118 at 11. Like the plaintiffs in *Palcko*, the truck drivers were responsible for the shipment of goods that had crossed state lines, even if they did not personally cross state boundaries as part of their job. *Id.* Put another way, the drivers were engaged in interstate commerce because they drove the direct, last leg of interstate shipments. The same does not hold true here.

Even less helpful is *Bacashihua v. U.S. Postal Serv.*, 859 F.2d 402 (6th Cir. 1988). *See* Pls.' Resp. at 12. There, the Sixth Circuit decided that a postal worker who

7

"was not personally engaged in interstate commerce," was, nonetheless, exempted from the FAA under § 1. *Bacashihua*, 859 F.2d at 405. The key inquiry, according to the court, "was not whether the individual worker actually engaged in interstate commerce, but whether the *class* of workers to which the complaining worker belonged engaged in interstate commerce." *Id.* (emphasis added). And, "[i]f any class of workers is engaged in interstate commerce, it is postal workers." *Id.* Likewise, in *Christie v. Loomis Armored US, Inc.*, the District of Colorado concluded that a currency-delivery driver was covered by the transportation-worker exemption because currency is "a good that is undisputedly in the stream of interstate commerce." 2011 WL 6152979 at *3 (D. Colo. Dec. 9, 2011).

Unlike postal workers, currency-delivery drivers, and supervisors of truck drivers in interstate trucking companies, Grubhub drivers do not belong to a class of workers engaged in interstate commerce. Their day-to-day duties do not involve handling goods that remain in the stream of interstate commerce, traveling to and from other states. The Plaintiffs resist this conclusion by citing cases involving the interstate shipment and processing of raw milk. Pls.' Resp. at 13. As Grubhub points out, however, these cases do not deal with statutory text akin to "engaged in" interstate commerce. Defs.' Reply at 11, n. 5. Instead, the cases deal with the broader term "in commerce" found in the Robinson-Patman Act. *See Dean Milk Co. v. F.T.C.*, 395 F.2d 696, 714 (7th Cir. 1968); *Foremost Dairies, Inc. v. F.T.C.*, 348 F.2d 674, 676-78 (5th Cir. 1965); *Glowacki v. Borden, Inc.*, 420 F. Supp. 348, 351-53 (N.D. Ill. 1976);

*Scardino Milk Distribs., Inc. v. Wanzer & Sons, Inc.*, 1972 WL 498, at *5 (N.D. Ill. Aug. 11, 1972).

Even if Robinson-Patman cases are relevant, the situation here is much closer to that in *Central Ice Cream Co. v. Golden Rod Ice Cream Co.*, where an ice-cream maker purchased butterfat produced with milk from Wisconsin but made all of its sales in Illinois. 287 F.2d 265, 266 (7th Cir. 1961). The Seventh Circuit held that—even though the milk used to make the ice cream came from out of state—the ice-cream maker only made *intrastate* sales, so it was not acting "in" interstate commerce. *Id* at 267. The same conclusion holds for Grubhub drivers here, who do not allege that they were delivering food for interstate sales. *See also Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1290 (11th Cir. 2005) (opining that the transportation-worker exemption would not apply to a "pizza delivery person who delivered pizzas across a state line to a customer in a neighboring town"). In any event, it bears repeating that the text of the FAA's transportation-worker exemption uses a narrower formulation ("engaged in" interstate commerce) than the Robinson-Patman Act ("in" interstate commerce).

There is another clue in the statutory text that the class of food-delivery drivers are not covered by the exemption: the specified categories are not similar to them. Section 1 starts the exemption list with specific classes of workers: "seamen" and "railroad employees." 9 U.S.C. § 1. Under a well-established principle of statutory construction, "where, as here, a more general term follows more specific terms in a list, the general term is usually understood to 'embrace only objects similar in nature

to those objects enumerated by the preceding specific words.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1625 (2018) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001)). Here, in § 1, the more general term is "other class of workers engaged in foreign or interstate commerce," which should be read as covering only those classes that are similar in nature to "seamen" and "railroad employees." Seamen and railroad workers are much more directly engaged in interstate commerce than the class of food-delivery drivers at issue here.[3]

As a final argument, the Plaintiffs rely on the Supreme Court's recent opinion in *New Prime*, where the Court stated that "§ 1 [of the FAA] helps define § 2's terms." *New Prime*, 139 S. Ct. at 537. According to the Plaintiffs, this means that it is inconsistent to hold both that (1) Grubhub drivers are not engaged in interstate commerce, and thus not subject to the transportation-worker exemption; and (2) the agreement between the drivers and Grubhub is covered by the FAA, "since Section 2 of the FAA limits the FAA's coverage to contracts related to interstate commerce." Pls.' Supp. Authority at 2-3.

As pertinent here, the text of § 2 states that the FAA covers "a written provision in any … contract evidencing a transaction *involving* commerce." 9 U.S.C. § 2 (emphasis added). This is, of course, different from—and broader than—the

---

[3]With regard to legislative history, the Supreme Court has explained that the legislative record on § 1 is "sparse." *Circuit City Stores*, 532 at 119. The most that the Court could make of the record was that "it is reasonable to assume that Congress excluded 'seamen' and 'railroad employees' from the FAA for the simple reason that it did not wish to unsettle established or developing statutory dispute resolution schemes covering specific workers." *Id.* at 121. There is no reason to think that a statutory dispute-resolution scheme would be undermined by having the FAA cover food-delivery drivers.

language in § 1, which requires that the employee be "engaged" in interstate commerce for the exemption to apply. The Supreme Court has explained that the wording of § 1 implies that Congress did *not* intend to regulate to the outer limits of its Commerce Clause authority, and that federal courts should interpret "engaged in commerce" more narrowly "than the more open-ended formulations 'affecting commerce' and 'involving commerce.'" *Circuit City Stores*, 532 U.S. at 117-19. Nothing in *New Prime* suggests that the Supreme Court altered the well-established difference between the two formulations. There is nothing illogical about the FAA covering workers who are not "engaged in interstate commerce" so long as the workers have entered a contract "involving commerce."

For all these reasons, the Plaintiffs are subject to the mandatory arbitration clause in the DSPA, which requires the parties "to resolve any and all disputes between or among them exclusively through final and binding arbitration." *See e.g.*, DSPA Agmts, Exh. 5 § 12. Because the Plaintiffs do not challenge the validity of the agreement to arbitrate or argue that their claims do not fall within the mandatory arbitration clause, arbitration is required. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).

It is worth noting that this decision applies to the named Plaintiffs, specifically, Carmen Wallace and Broderick Bryant. Because the collective action had not yet been certified or even litigated (and indeed not even conditional certification was litigated), it does not appear that the decision directly applies to the opt-in plaintiffs.[4] Before

---

[4] Earlier, the Court had asked for information about opt-in plaintiff LaTigre Waters, R. 55, but the Court was still trying to figure out the scope of the decision at that point.

certification occurs, opt-in plaintiffs are not formally entitled to notices, so it does not appear that pre-certification decisions can bind them. If Grubhub disagrees, then it may file a motion to amend the judgment (and of course the Plaintiffs' counsel will have a chance to respond to the motion).

**C. Dismissal or Stay**

When a claim is covered by a valid arbitration agreement, the FAA requires that courts stay the federal proceedings and compel arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). Grubhub requests that the Court instead dismiss the case. Defs.' Br. at 6. Dismissal under Rule 12(b)(3) is proper when an agreement requires arbitration in another district. *Faulkenberg v. CB Tax Franchise Sys., LP,* 637 F.3d 801, 808 (7th Cir. 2011). The Seventh Circuit has also instructed that, generally, "the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008).

But that general approach has given way in cases where the entire dispute clearly will be decided in arbitration and thus there is no reason to hold on to the case. *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1008–09 (N.D. Ill. 2013) (describing "a judicially-created exception to the general rule which indicates district courts may, in their discretion dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration") (quoting *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769–70 (8th Cir. 2011)). Although it has not expressed outright approval of this approach, the Seventh Circuit has repeatedly

affirmed dismissals where the entirety of the action must be resolved in arbitration. *See, e.g.*, *Johnson v. Orkin, LLC*, 556 Fed. App'x. 543, 544 (7th Cir. 2014) (non-precedential disposition); *Baumann v. Finish Line, Inc.*, 421 Fed. App'x. 632, 636 (7th Cir. 2011) (non-precedential disposition); *Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 668 (7th Cir. 2003); *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 679 (7th Cir. 2002). That approach also has the salutary effect of issuing a final decision, 28 U.S.C. § 1291, so that appellate jurisdiction is clear if the compelled party wishes to appeal the decision requiring arbitration.

Here, the DSPA does not require arbitration in a specific district but rather states that "[i]f the parties cannot otherwise agree on a location for the arbitration, the arbitration shall take place in the city in which [the driver] provided Delivery Services under this Agreement." DSPA Agmts, Exh. 5 § 12(d)(ii). It is likely that Wallace would want to arbitrate in Chicago, whereas Bryant might pick Long Beach. In any event, because of the breadth of the DSPA's arbitration provision, there is no reason to stay the case, rather than dismiss it for lack of venue (because the dispute must be arbitrated). There is no doubt that the entire case must be arbitrated, so dismissal is the right course.

### IV. Conclusion

For the reasons discussed, the Defendants' motion to compel arbitration is granted against the named Plaintiffs, Carmen Wallace and Broderick Bryant. Because the claims set forth in the complaint are all subject to arbitration, the case is dismissed for lack of venue. The collective action was not certified, even

13

conditionally, so the decision does not apply to the opt-in plaintiffs, but the case is dismissed without prejudice because the named Plaintiffs must arbitrate the claims. A final judgment shall be entered separately on the docket. The status hearing of April 3, 2019 is vacated.

f

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 28, 2019